<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| EARL PEEPLES, | : | |
| | : | Civil Action |
| Plaintiff, | : | No. 11-6238 (JAP) |
| | : | |
| v. | : | |
| | : | |
| HONORABLE | : | |
| JAMES N. CITTA et al., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| EARL D. PEEPLES, | : | Civil Action |
| | : | No. 12-2203 (JAP) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| PAUL K. LAGANA et al., | : | <u>**OPINION**</u> |
| | : | **APPLIES TO BOTH ACTIONS** |
| Respondents. | : | |

**Pisano**, District Judge:

These two matters come before the Court upon Earl Peeples' ("Peeples") commencement of two proceedings in this District: a civil rights action in <u>Peeples v. Citta</u> ("<u>Peeples-I</u>"), Civil Action No. 11-6238 (JAP), and a habeas action in <u>Peeples v. Lagana</u> ("<u>Peeples-II</u>"), Civil Action No. 12-2203 (JAP).

For the reasons detailed below, the Court will grant Peeples <u>in forma pauperis</u> status for the purposes of both actions and will dismiss both pleadings. Both dismissals will be with prejudice.

## I.   BACKGROUND

The facts underlying Peeples' claims asserted in both above-captioned actions were summarized by the Superior Court of New Jersey, Appellate Division, as follows:

> On October 7, 2002, [Peeples] pled guilty to . . . first degree attempted murder . . . pursuant to a negotiated agreement with the State.  In response to the [trial] court's questions, [Peeples] testified under oath that, on December 17, 2001, he stabbed the mother of his child "numerous times" with a kitchen knife, purposely attempting to cause her death.  In return for [Peeples'] plea, the State agreed to dismiss the remaining counts . . . and recommend to the [trial] court that [Peeples] be sentenced to a term of imprisonment [of] fifteen years, subject to an eighty-five percent period of parole ineligibility and five-year parole supervision under the No Early Release Act ("NERA") . . . .  On November 22, 2002, the [trial court] sentenced [Peeples] consistent with the plea agreement to a term of fifteen years, with the mandatory period of parole ineligibility and parole supervision provided for in NERA.  . . .  [Peeples] appealed the sentence imposed by the trial court [arguing that his sentence was unduly] excessive . . . .  By order dated May 24, 2004, [the Appellate Division] affirmed [Peeples'] sentence.  On July 13, 2007, [Peeples] filed [a post-conviction relief ("PCR")] petition alleging [(1)] ineffective assistance of trial and appellate counsel [that resulted in, allegedly, excessive sentence]; (2) the trial court [allegedly] impermissibl[e] . . . finding [of] certain aggravating factors [that resulted in, allegedly, excessive sentence]; and (3) the trial judge['s] . . . comments [uttered] during the sentencing hearing [which, Peeples maintained, verified the trial court's bias against him and undue intent to impose an excessive sentence. Peeples'] PCR petition came for adjudication before Judge James J. Den Uyl on August 29, 2008.  Judge Den Uyl was not the judge who presided [over Peeples'] plea hearing and ultimately sentenced him.  [During the PCR proceedings, Peeples'] PCR counsel argued [with regard to Peeples' third claim] that the following comments made by the judge who sentenced [Peeples] showed bias based on [Peeples'] and the victim's race. [(Peeples] is African American and the victim [is] Caucasian[)]:

> You're a dangerous individual [Mr. Peeples]. You look up domestic violence in the dictionary, your picture should be next to it. The only difference between you and O.J. Simpson is he had more money and he got off for some reason in a land of fruits and nuts. And the only difference between the victim here and Nicole Brown Simpson is that she got lucky and somebody was able to get her some medical assistance before she bled to death on her living room floor.

> . . . . [The Appellate Division] reject[ed Peeples'] arguments and affirm[ed denial of PCR relief] substantially for the reasons expressed by Judge Den Uyl. . . . . [The Appellate Division commented that it] was an egregious crime committed by [Peeples] against the mother of his child, made even more alarming when considered against [Peeples'] history of domestic violence. Although the trial court's remarks at the sentencing hearing were clearly inappropriate, the record support[ed] the ultimate sentence imposed . . . .

State v. Peeples, 2011 N.J. Super. Unpub. LEXIS 1587, at *1-6 (N.J. Super. Ct. App. Div. June 20, 2011) (footnotes incorporated in the main text, original brackets removed); certif. denied 208 N.J. 601 (Dec. 6, 2011).

## II. PROCEEDINGS AT BAR

### A. <u>Procedural History</u>

On October 24, 2011, the Clerk received Peeples' civil complaint; that submission gave rise to Peeples-I. See Peeples-I, Docket Entry No. 1. The complaint arrived unaccompanied by the applicable filing fee or by Peeples' application to proceed in that civil rights matter in forma pauperis. See id. Correspondingly, this Court denied Peeples in forma pauperis status without prejudice and directed him to submit either his filing fee of

3

$350.00 or his duly executed in forma pauperis application.  See Docket Entry No. 3.  To assist Peeples in that endeavor, the Court directed the Clerk to serve Peeples with a blank in forma pauperis application form.[1]  See id. at 3.  The Clerk duly complied.

However, on January 13, 2012, the Clerk's mailing to Peeples was returned as undeliverable.  See Docket Entry No. 4.  Almost three months later, on April 2, 2012, the Clerk received a letter from Peeples; that letter included Peeples' in forma pauperis application and requested reopening of Peeples-I.  See Docket Entry No. 5.

One week later, on April 9, 2012, the Clerk received Peeples' habeas petition, executed pursuant to Section 2254, see Peeples-II, Docket Entry No. 1; that petition – much like Peeples' complaint in Peeples-I, arrived unaccompanied by the applicable filing fee of $5.00 or by Peeples' application to proceed in that habeas matter in forma pauperis.  See id.

In light of Peeples' submission of his in forma pauperis application in Peeples-I, the Court finds it warranted to grant Peeples in forma pauperis status for the purposes of both actions,

_____

[1]  Pursuant to the Court's order, Peeples-I was administratively terminated, subject to reopening in the event Peeples submitted his in forma pauperis application within thirty days from the date of entry of the Court's order; Peeples was expressly advised that administrative termination was not a dismissal on merits, and that Peeples-I would be reopened upon timely receipt of his in forma pauperis application.  See Peeples-I, Docket Entry No. 3, at 3.

4

that is, Peeples-I and Peeples-II, and will direct the Clerk to assess the applicable filing fee against Peeples in connection with Peeples-I and to file his civil complaint in that action.[2]

**B.   Peeples' Allegations**

**1.   *Peeples-I***

In his Peeples-I pleading, Peeples: (a) stated, at length, numerous "paraphrasings" of the model canons of judicial ethics recommended by the American Bar Association, compare Peeples-I, Docket Entry No. 1, at 1-2, to <<http://www.americanbar.org/ content/dam/aba/migrated/judicialethics/Canon1Final.authcheckdam. pdf>>;[3] (b) named, as the sole Defendant in that action, Honorable James N. Citta ("Judge Citta"), who was Peeples' trial judge,[4] see

---

[2]   Peeples' habeas petition, submitted in Peeples-II, was automatically deemed filed upon receipt due to the unique safeguards embedded in the very nature of habeas proceedings. The Court's grant of in forma pauperis status to Peeples in connection with his habeas Peeples-II action disposes of the issue of a filing fee without yielding any assessment against him.

[3]   The Court notes, in passing, that model canons of judicial ethics do not apply to the New Jersey judiciary; rather, the New Jersey judiciary is governed by the Code of Judicial Conduct of the American Bar Association, as amended by the New Jersey Supreme Court: these amended set of rules replaced the model canons.   See <<http://www.judiciary.state.nj.us/rules/ appendices/app1_jud.htm>>.   However, this distinction is of no substantive import for the purposes of the Court's analysis at hand.

[4]   Judge Citta was serving as a judge in the Superior Court of New Jersey, being assigned to the Criminal Division in the Ocean Vicinage.   See <<http://pdfserver.amlaw.com/nj/citta-complaint040109.pdf>>.

Peeples-I, Docket Entry No. 1, at 4; (c) alleged that Judge Citta violated the ethics canons by: (1) telling the mother of Peeples' victim that Judge Citta would accept the mother's statement into evidence; and by (2) uttering the comment quoted by the Appellate Division (i.e., Judge Citta's observations that Peeples' picture should be utilized as an illustration to the topic of domestic violence and that there were similarities between the trial of Peeples and O.J. Simpson, and between injuries suffered by Peeples' victim and Nicole Brown), see id. at 5-6; and (d) sought compensatory and punitive damages. See id. at 8-9.

Peeples' complaint also asserted that Judge Citta "retaliated" against Peeples by being, allegedly, prejudiced against Peeples and by making the above-mentioned comments. See id. at 7-8. In connection with this allegation, Peeples opined that Judge Citta's comments must have been made with "malicious intention," rendering Peeples' sentence "retaliatory," and so Judge Citta should not be entitled to absolute immunity. Id. at 6-7.

### 2. *Peeples-II*

In his Peeples-II pleading, Peeples restated, once again, his "paraphrasings" of the model canons of judicial ethics recommended by the American Bar Association and, in addition, verified the timeline of events provided by the Appellate Division in Peeples, 2011 N.J. Super. Unpub. LEXIS 1587, and by the Supreme Court of New

Jersey in State v. Peeples, 208 N.J. 601.  Specifically, Peeples'
§ 2254 petition in Peeples-II verified that:

(a)  he took a guilty plea as to the sole charge underlying his
     conviction;

(b)  he challenged his sentence on direct appeal;

(c)  his sentence was affirmed by the Appellate Division on May 25,
     2004;[5]

(d)  he did not seek certification from the Supreme Court of New
     Jersey as to this affirmance of his sentence;

(e)  he filed his PCR application on July 13, 2007;[6] and

(f)  the New Jersey Supreme Court denied him certification as to
     his PCR application on December 6, 2011.

---

[5]  Peeples' assertions differ from the statements made by
the Appellate Division in the sense that Peeples maintains that
the Appellate Division affirmed his sentence on May 25, 2004,
while the Appellate Division designated that date as May 24,
2004.  For the purposes of this Opinion only, and without making
a factual finding, this Court will read the discrepancy in
Peeples' favor.

[6]  The habeas petition at bar (filed in Peeples-II) raises
the same three grounds that Peeples raised during his PCR
proceedings, i.e., the three challenges to his *sentence*. (Indeed,
having taken a guilty plea, Peeples could not challenge in his
Peeples-II habeas action anything but the validity of his plea or
his sentence.)  Thus, in his instant Peeples-II habeas action,
Peeples' first claim asserts that ineffective assistance of his
trial and appellate counsel contributed to Judge Citta's undue
selection of his sentence; his second claim alleges that Judge
Citta made a wrongful finding as to certain aggravating factors
(and that, too, contributed to Judge Citta's undue selection of
his sentence); and his last claim maintains that Judge Citta was
biased against Peeples in imposing his sentence (and that also
contributed to Judge Citta's undue selection of Peeples'
sentence).  See, generally, Peeples-II, Docket Entry No. 1.

See Peeples-II, Docket Entry No. 1 (Peeples' § 2254 petition, executed on March 29, 2012, i.e., almost four months after the New Jersey Supreme Court denied him certification as to his PCR).

## III. DISCUSSION

### A.   The Allegations in *Peeples-I* Fail to State a Claim

#### 1.   Standard of Review

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity. See 28 U.S.C. § 1915A(a).   The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b).

Ashcroft v. Iqbal, 556 U.S. 662 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[7] which was previously applied to determine if a federal complaint stated a claim.  Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).   To survive dismissal under Iqbal, "a complaint must contain sufficient factual

---

[7]   The Conley Court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Iqbal, 129 S. Ct. at 1949 (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully.

Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief," and will be dismissed. Id. (citations and internal quotation marks omitted). The Court of Appeals instructed that, to determine the sufficiency of a complaint under the pleading regime established by Iqbal,

> a court must take three steps: First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Santiago v. Warminster Township, 629 F. 3d 121, 130 (3d Cir. 2010) (citations and quotation marks omitted); see also Fowler, 578 F.3d at 210-211 ("a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts").

### 2.   Section 1983 Action

Section 1983 of Title 42 of the United States Code authorizes a person such as Peeples to seek redress for a violation of his federal civil rights by a person who was acting under color of state law.  Specifically, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

### 3.   Judicial Immunity

The doctrine of judicial immunity provides that "judges are immune from suit under section 1983 for monetary damages arising from their judicial acts."  Gallas v. Supreme Court of Pa., 211 F.3d 760, 768 (3d Cir. 2000); see also Mireles v. Waco, 502 U.S. 9 (1991) (per curiam).  To determine whether the judicial immunity doctrine applies, the Court must establish: (a) whether the judge's actions were "judicial" in nature; and (b) whether the judge acted

10

in the "clear absence of all jurisdiction over the subject matter." Gallas, 211 F.3d at 768-69 (quoting Stump v. Sparkman, 435 U.S. 349, 356 n.6 (1978)).  An act is judicial in nature if "it is a function normally performed by a judge" and if the parties "dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.

Here, the complaint in Peeples-I alleges that Judge Citta expressed his opinion about the admissibility of the victim's mother's testimony and, in addition, commented on Peeples' propensity to crime during his sentencing by observing that Peeples' picture should be utilized as an illustration on the topic of domestic violence, and that there were similarities between the trial of Peeples and O.J. Simpson and between injuries suffered by Peeples' victim and Nicole Brown.  While Judge Citta's choice of particular language might be considered inappropriate or disagreeable, there is no doubt that Judge Citta's acts of uttering those comments qualify as acts "normally performed by a judge," and the parties in each instance interacted with Judge Citta "in his judicial capacity." Additionally, because Judge Citta was properly called to preside over Peeples' criminal trial, including his plea hearing and his sentencing hearing, there could be no basis for a presumption that Judge Citta acted "in the clear absence of all jurisdiction." Gallas, 211 F.3d at 769.  Therefore, all of Judge Citta's acts complained about by Peeples are covered by the doctrine of judicial immunity.

While Peeples opines that absolute immunity must be inapplicable to Judge Citta's judicial acts (because Peeples believes that Judge Citta acted with "malicious intention"), Peeples' position is unavailing.[8] "[A litigant's] allegations of bad faith [and] malice" cannot overcome [judicial] immunity." Abulkhair v. Rosenberg, 2012 U.S. App. LEXIS 494 (3d Cir. Jan. 10, 2012) (quoting Mireles, 502 U.S. at 11). Simply put, "an act does not become less judicial by virtue of an allegation of malice or corruption of motive," or that such action is "unfair" or "controversial." Gallas, 211 F.3d at 769; accord Stump, 435 U.S. at 363 ("[d]isagreement with the action taken by the judge . . . does not justify depriving the judge of his immunity"). Thus, Peeples' claims against Judge Citta are wholly without merit.

**B.   _Peeples-I_ Does Not Warrant Leave to Amend**

Ordinarily, a plaintiff may be granted "leave [to amend,] . . . when justice so requires." See Foman v. Davis, 371 U.S. 178, 182

---

[8]  Peeples' "retaliation" claim also lacks merit. First, a claim of retaliation is not "special," in the sense that it has no unique power to overcome absolute judicial immunity. Second, retaliation claims are analyzed under a three-part test: plaintiff must prove that, first, he engaged in a constitutionally-protected activity; second, the government responded with a retaliation, and third the plaintiff shows that the particular protected activity caused the particular retaliation. See Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 282 (3d Cir. 2004). Here, Peeples asserts no protected activity of any kind and shows no causal connection; he merely alleges that Judge Citta "retaliated" against him because Judge Citta was biased. However, Judge Citta's bias, assuming arguendo that bias was present, does not set forth an element or state a claim for unconstitutional retaliation under § 1983.

(1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).
Indeed, "[t]he Federal Rules reject the approach that pleading is
a game of skill in which one misstep by counsel may be decisive to
the outcome and accept the principle that the purpose of pleading
is to facilitate a proper decision on the merits." Foman, 371 U.S.
at 182-83.  However, "[a]llowing leave to amend where 'there is a
stark absence of any suggestion by the plaintiffs that they [might]
developed any facts since the action was commenced, which would, if
true, cure the defects in the pleadings . . . , would frustrate
Congress's objective in enacting this statute of 'provid[ing] a
filter at the earliest stage (the pleading stage) to screen out
lawsuits that have no factual basis."' Cal. Pub. Emples'. Ret.
Sys. v. Chubb Corp., 394 F.3d 126, 164 (3d Cir. 2004) (citation
omitted).  In Peeples-I, Peeples' claims indicate, in no ambiguous
terms, that he seeks to sue Judge Citta for the acts undertaken and
statements uttered by Judge Citta in his judicial capacity.
Peeples cannot change that by re-pleading.  Therefore, granting him
leave to amend his complaint in Peeples-I would necessarily be
futile.  Correspondingly, no leave to amend will issue, and the
complaint in Peeples-I will be dismissed with prejudice.

    C.    ***Peeples-II* Does Not Warrant Habeas Relief**

        1.    **The Petition is Untimely and Lacks Merit**

On April 24, 1996, Congress enacted the Anti-Terrorism and
Effective Death Penalty Act ("AEDPA"), which provides that "[a] 1-

13

year period of limitation shall apply to an application for a writ
of habeas corpus by a person in custody pursuant to the judgment of
a State court." 28 U.S.C. § 2244(d)(1).  The limitations period
runs from "the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review." 28 U.S.C. § 2244(d)(1).  A state-court
criminal judgment becomes "final" within the meaning of §2244(d)(1)
by the conclusion of direct review or by the expiration of time for
seeking such review, including the 90-day period for filing a
petition for writ of certiorari in the United States Supreme Court.
See <u>Swartz v. Meyers</u>, 204 F.3d 417, 419 (3d Cir. 2000); <u>Morris v.
Horn</u>, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

Here, the Appellate Division affirmed Peeples' sentence on May
25, 2004.  Since Peeples did not seek certification from the
Supreme Court of New Jersey as to his direct appeal, his judgment
of conviction became final, and his AEDPA period of limitations
began to run, when his time to file such petition for certification
expired, <u>see</u> <u>Kapral v. United States</u>, 166 F.3d 565, 577 (3d Cir.
1999), <u>i.e.</u>, forty-five days after the Appellate Division entered
its decision.  <u>See</u> N.J. Rules 2:4-1(a) ("Appeals from final
judgments of courts . . . shall be taken within 45 days of their
entry").  Therefore, Peeples' 1-year AEDPA period began to run on
July 9, 2004, and expired on July 8, 2005.

14

The statute of limitations under § 2244(d) is subject to statutory tolling for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending," 28 U.S.C. § 2244(d)(2), provided that the application to the state court seeking collateral review was filed *during* the period of limitations.  In contrast, an inmate's filing of his/her PCR application cannot be relevant to the statutory tolling analysis if the inmate files such PCR application *after* his/her period of limitations expires.  See Long v. Wilson, 393 F.3d 390, 394-95 (3d Cir. 2004); Schlueter v. Varner, 384 F.3d 69, 78-79 (3d Cir. 2004).

Here, Peeples filed his PCR application on July 13, 2007, that is, *more than two years* after his AEDPA period of limitations expired.  Therefore, his PCR filing could not trigger statutory tolling and had no impact on his AEDPA period. Accordingly, his petition currently pending before this Court in Peeples-II (being filed sometime between March 29, 2012, and April 9, 2012)[9] has been time-barred for almost seven years.

---

[9]  According to the "prison mailbox rule," Peeples' petition was deemed filed on the date when he actually submitted his petition to his prison authorities for mailing to this Court. See Longenette v. Krusing, 322 F.3d 758, 761 (3d Cir. 2003) (relying on Houston v. Lack, 487 U.S. 266(1988)).  It is self-evident that this act could not have occurred prior to March 29, 2012 (the date of Peeples' execution of his petition) or after April 9, 2012 (the date of the Clerk's receipt of this petition).

Moreover, considerations of equitable tolling are inapplicable to the pleading filed in Peeples-II.  While, in addition to being subject to statutory tolling, the AEDPA statute of limitations is also subject to equitable tolling, see Holland v. Florida, 130 S. Ct. 2549 (2010), Miller v. N.J. State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998), "a litigant seeking equitable tolling bears the burden of establishing two elements: (a) that he has been pursuing his rights diligently, and (b) that some extraordinary circumstance stood in his way."[10]  Pace v. DiGuglielmo, 125 S. Ct. 1807, 1814 (2005); see also Holland, 130 S. Ct. 2549.

The Court of Appeals instructed that equitable tolling could be appropriate only when "the principles of equity would make the rigid application of a limitation period unfair, such as when a state prisoner faces extraordinary circumstances that prevent him from filing a timely habeas petition and the prisoner has exercised

---

[10] Recently, the Supreme Court entered two decisions related to the issues of missed deadlines and procedural default, see Maples v. Thomas, 132 S. Ct. 912 (2012) (where procedural default was found, there could be "cause" to excuse a missed notice of appeal deadline in state court if the litigant shows that his attorneys abandoned him and he had no reason to suspect that he lacked counsel able and willing to represent him during the time permitted for an appeal), and Martinez v. Ryan, 2012 U.S. LEXIS 2317 (U.S. Mar. 20, 2012) (where, under state law, claims of ineffective assistance of trial counsel must be raised in a collateral proceeding, a procedural default might not bar a federal habeas court from hearing ineffective assistance claims if, during the initial PCR proceeding, there was no counsel at all or that counsel was ineffective).  However, neither Martinez nor Maples provide bases for granting Peeples equitable tolling: nothing in Peeples-II suggests, even remotely, that Peeples experienced the circumstances described in those cases.

16

reasonable diligence in attempting to investigate and bring his claims." LaCava v. Kyler, 398 F.3d 271, 275-276 (3d Cir. 2005); see also Holland, 130 S. Ct. 2549 (same). Mere excusable neglect is not sufficient. See id.; see also Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Extraordinary circumstances have been found where: (a) the respondent has actively misled the plaintiff, (b) the petitioner has in some extraordinary way been prevented from asserting his rights, (c) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (d) the court itself has misled a party regarding the steps that the party needs to take to preserve a claim. See Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005).

Moreover, even where extraordinary circumstances do exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown v. Shannon, 322 F.3d 768, 773 (3d Cir. 2003) (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Here, in order to qualify for equitable tolling, Peeples has to show the presence of extraordinary circumstances during the seven years when his § 2254 petition has been time-barred. No such

17

extraordinary circumstances are present here: Peeples' filings in Peeples-I and Peeples-II indicate that he did, indeed, file numerous submissions during his state PCR proceedings and, in addition, he also filed an ethics grievance against Judge Citta – all while his § 2254 petition was getting progressively more stale. Furthermore, having his application for certification as to his PCR denied by the Supreme Court of New Jersey on December 6, 2011 (that is, having his § 2254 petition time-barred, by then, for about six and a half years), Peeples still took almost four months to file his § 2254 petition, which is now at bar in Peeples-II. Therefore, it is evident that Peeples could have filed his federal habeas petition timely had he acted diligently, or -- at the very least -- he could have timely sought stay and abeyance in order to preserve his right to Section 2254 review.[11]  He did not, and under such circumstances, he is not entitled to equitable tolling.  Therefore, his Peeples-II petition is subject to dismissal as untimely.[12]

---

[11]  In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court approved a stay-and-abeyance procedure, under which a district court may stay a timely habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims.  See id. at 275.  The decision in Rhines was issued on March 30, 2005, that is, more than two months prior to expiration of Peeples' AEDPA period.  Therefore, Peeples could have easily preserved his right to federal habeas review and then pursued his PCR challenges in state courts.

[12]  Moreover, even if this Court were to hypothesize that Peeples' § 2254 petition could, somehow, qualify for equitable tolling, his challenges would fail substantively.  As noted supra, Peeples pled guilty to the offense underlying his conviction; his challenges are limited solely to his sentence.  A

## 2.   Certificate of Appealability Will Not Issue

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA") on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

---

challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  See Pringle v. Court of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984); see also 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991). "The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'"  Ewing v. California, 538 U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has identified three factors that may be relevant to a determination of whether a sentence is so disproportionate to the crime committed that it violates the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292 (1983). Additionally, Justice Kennedy has explained that Solem does not mandate comparative analysis within and between jurisdictions, see Harmelin v. Michigan, 501 U.S. 957, 1004-05 (1990) (Kennedy, J., concurring in part and in judgment), and he has identified four principles of proportionality review ("the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors") that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence.  [I]t forbids only extreme sentences that are 'grossly disproportionate' to the crime." Id. at 1001 (citation omitted).  Peeples' challenges to his sentence would not be reviewable in this Court, since he has presented no cogent argument why his sentence is unconstitutional or "grossly disproportionate" to the crime he committed.  Thus, even if Peeples' § 2254 petition had been deemed timely, it would be subject to dismissal on the merits.

In <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000), the United States Supreme Court held: "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u>

Here, jurists of reason would not find it debatable whether dismissal of Peeples' § 2254 petition as untimely is correct. The Court, therefore, will decline to issue Peeples a certificate of appealability, pursuant to 28 U.S.C. § 2253(c).[13]

**IV.  CONCLUSION**

---

[13]  Alternatively, a certificate of appealability is not warranted on the merits.  Since the Court has observed that Peeples' claims would not warrant habeas relief even if his § 2254 petition had been deemed timely, a different analysis applies to that observation.  As with claims dismissed on procedural grounds, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), but "[a] petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims." <u>Miller-El v. Cockrell.</u>, 537 U.S. 322, 327 (2003).  Here, as the Court's substantive analysis illustrated, <u>see</u> <u>supra</u>, note 12, Peeples failed to make a showing of the denial of a constitutional right, and the Court is persuaded that jurists of reason would not disagree with this conclusion.

For the foregoing reasons, the Court will: (a) grant Peeples' motion to reopen Peeples-I; (b) grant Peeples in forma pauperis status for the purposes of both Peeples-I and Peeples-II (correspondingly, the Court will direct assessment of the filing fee against Peeples in connection with Peeples-I); (c) direct the Clerk to file Peeples' complaint in Peeples-I; (d) dismiss Peeples' civil rights claims in Peeples-I, with prejudice; (e) dismiss Peeples' habeas claims in Peeples-II, with prejudice, as untimely, and, alternatively, on the merits; and (f) deny Peeples certificate of appealability in connection with Peeples-II.

An appropriate Order accompanies this Opinion.


/s/ JOEL A. PISANO
**JOEL A. PISANO**
**United States District Judge**

Dated: April 16, 2012

21